JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> PRICE LAW GROUP, a California Professional Corporation and FINANCIAL WARRANTY, LLC, a Florida Limited Liability Company <br><br> Defendant. | § § § § § § § § § § § § § § § EP23CV0174 |

# PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant PRICE LAW GROUP ("Price Law") is a Professional Corporation organized and existing under the laws of California with a principal address of 6345 Balboa Boulevard, Building 2, STE 247, Encino, California 91316, and can be served via registered agent Stuart Price, 6345 Balboa Boulevard, Building 2, STE 247, Encino, California 91316.

3. Defendant FINANCIAL WARRANTY LLC ("Financial Warranty") is a limited liability company organized and existing under the laws of Florida with a principal address of 6501 Congress Avenue, STE 246, Boca Raton, Florida 33487. With information and belief, 6501 Congress Avenue is a virtual office with no physical presence. Financial Warranty can be served via registered agent John Doyle, 495 Brickell Ave, Apt 4504, Miami, Florida 33131.

## JURISDICTION AND VENUE

1

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

23. Plaintiff did not consent to any of the phone calls alleged herein.

24. Each and every phone call at issue in this Complaint is a solicitation phone call marketing debt relief.

25. Each and every phone call at issue in this Complaint was made using a manufactured caller identification that displayed a Texas area code to suggest the calls were being made from Texas.

26. Table A shows the phone calls sent to Plaintiff by Defendant Financial Warranty at the direction of Defendant Price Law.

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 06/10/2022 | 12:29 PM | 346-818-2658 | 36 sec phone call soliciting debt relief |
| 2 | 06/15/2022 | 2:30 PM | 469-809-4629 | Displayed Financial W on caller ID |
| 3 | 06/15/2022 | 4:15 PM | 469-481-1260 | Displayed Financial W on caller ID |
| 4 | 06/15/2022 | 4:16 PM | 469-587-6743 | Displayed Financial W on caller ID |
| 5 | 06/16/2022 | 10:33 AM | 832-219-6715 | Displayed Financial W on caller ID |
| 6 | 06/16/2022 | 11:55 AM | 832-219-7780 | 1 minute call. Soliciting Debt relief |
| 7 | 06/16/2022 | 4:11 PM | 346-707-2470 | Displayed Financial W on caller ID |
| 8 | 06/27/2022 | 12:23 PM | 346-666-7297 | Displayed Financial W on caller ID |
| 9 | 06/27/2022 | 12:50 PM | 346-666-7297 | Displayed Financial W on caller ID |

| 10 | 06/27/2022 | 12:51 PM | 346-666-7297 | 43 sec phone call soliciting debt relief |
| 11 | 04/20/2023 | 1:50 PM | 915-265-0547 | Phone call after DNC |
| 12 | 04/21/2023 | 10:27 AM | 469-824-3627 | Phone call after DNC |
| 13 | 04/21/2023 | 11:15 AM | 346-248-4332 | Phone call after DNC |
| 14 | 04/24/2021 | 2:26 PM | 936-755-4652 | Sammie asking why I canceled. |

27. Call #1. On June 10, 2022, Plaintiff received a phone call that displayed 346-818-2658 on the caller identification. Plaintiff's caller identification also displayed the name "Financial W." Plaintiff answered the phone and after a delayed pause, the telemarketer began to solicit Plaintiff for debt relief. The call disconnected after 36 seconds.

28. Calls #2-4. On June 15, 2022, Plaintiff received a total of three missed phone calls that displayed 469-809-4629, 469-481-1260, and 469-587-9743 on the caller identification." The three June 15, 2022, phone calls all displayed "Financial W" on the caller identification.

29. Call #5-7. On June 16, 2022, Plaintiff received three additional phone calls that displayed 832-219-6715, 832-219-7780, and 346-707-2470 on the caller identification. Plaintiff answered the phone call ending in 7780 and was solicited for debt relief services. Plaintiff discontinued the call after one minute.

30. Each of the phone calls in paragraph 27 displayed "Financial W" on Plaintiff's caller identification.

31. Calls 8-10. On June 27, 2022, Plaintiff received three phone calls that displayed 346-666-7297 on Plaintiff's caller identification. Plaintiff answered the second and third of these calls and was solicited for debt relief services before Plaintiff discontinued the calls. Each of these calls displayed the name "Financial W" on Plaintiff's caller identification.

32. Call #11. On April 20, 2023, Plaintiff received a phone call that displayed 915-265-0547

7

on the caller identification. The caller identification also displayed the name "Financial W." Plaintiff answered the phone and was greeted by a telemarketer who said his name was "Rickey." Rickey inquired about Plaintiff's debt load and solicited Plaintiff for debt relief.

33. Rickey live-transferred Plaintiff his "account manager" who identified herself as "Sammie from Financial Warranty."

34. Sammie informed Plaintiff that an attorney would be working on Plaintiff's case. Plaintiff asked for the attorney information and was informed by Sammie the attorney information would be sent via email. Sammie continued the solicitation before passing Plaintiff off to her "Compliance Officer" Jose Morales.

35. Jose Morales ("Morales") went over a series of compliance questions and then sent Plaintiff a contract from Financial Warranty via email through DocuSign.

36. Morales then sent Plaintiff an email containing a link to https://www.pricelawgroup.com as the attorney Financial Warranty enrolls consumers with to eliminate debts.

37. Plaintiff went through the process of enrolling in the debt elimination services in order to find out who had placed eleven phone calls to Plaintiff from various phone numbers displaying "Financial W" on the caller identification. a car warranty policy from Defendant for the sole purpose of unearthing who had been making anonymous automated phone calls to Plaintiff.

38. On April 20, 2023, the same day Plaintiff received the contract, Plaintiff sent an email to info@financialwarranty.com to cancel the contract because Plaintiff was not in need of the services. The email stated:

> "Please cancel my contract with Financial Warranty. Do not call again. You can identify me with my name, phone number, and email address. There is no reason to not honor my request to not be called again.
> Thank you,
>
> Brandon Callier

8

39. Plaintiff has email read notification tracking enabled in his Gmail. Plaintiff was able to see that on April 21, 2023, Plaintiff's email was opened a total of 10 times.

40. Defendant Financial Warranty called Plaintiff a total of four times after receiving Plaintiff's request to not be called again.

41. On April 24, 2023, Plaintiff received a phone call from Sammie asking Plaintiff why he had canceled the contract. Sammie undoubtedly had knowledge of Plaintiff's contract cancel request and DNC request when she called Plaintiff.

42. On April 26, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for either of the Defendants

43. Defendants did not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident and was located in El Paso, County Texas at all times during the calls at issue.

44. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketing calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

45. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

46. No emergency necessitated the calls.

47. Through information and belief, Defendant Financial Warranty did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

48.     Through information and belief, Defendant Financial Warranty did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

49.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

50.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

51.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

52.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone

## VICARIOUS LIABILITY OF DEFENDANT PRICE LAW FOR CALLS PLACED BY FINANCIAL WARRANTY

53.     Price Law is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as John Doe. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

54.     Price Law markets legal representation through direct telephone solicitation by its hired Financial Warranty telemarketers, who act on its behalf. Financial Warranty was Price Law's agent when it made the prohibited calls on behalf of, and with the actual authority from, Price Law pursuant to a contract that governs Financial Warranty's telemarketing for Price Law.

10

55. Price Law directs, controls, authorizes, and pays Financial Warranty to generate leads for Defendant Price Law's legal services. Moreover, it requires, authorizes, or at least permits Financial Warranty's telemarketers to solicit explicitly for Price Law's legal representation.

56. Price Law sets the criteria for qualifying leads, which Financial Warranty must follow, and Financial Warranty approves leads qualified on those criteria exclusively to Price Law.

57. On information and belief, Price Law writes or at least approves the call script AFC's telemarketers use when qualifying leads for Price Law.

58. Financial Warranty telemarketers are Price Law's associates and do nothing to disturb the impression that Financial Warranty's telemarketers work for and speak and act on behalf of, Price Law.

59. From Financial Warranty's telemarketer's initial call through the last call received by Plaintiff, Price Law's debt solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Price Law, the principal, with Financial Warranty acting as Price Law's agent.

60. Financial Warranty, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Price Law's criteria, and then enrolled Plaintiff in Price Law's debt settlement program.

### Violations of the Texas Business and Commerce Code § 302.101

61. The actions of Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

62. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

63. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

64. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

65. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

66. Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case to include attorney's fees, deposition costs, investigation costs, and witness fees.

## CAUSES OF ACTION

### COUNT ONE

**Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C)**

**(Against All Defendants)**

67. Plaintiff incorporates the preceding paragraphs 1-66 as if fully set forth herein.

68. The foregoing acts and omissions of Defendant Price Law and Defendant Financial Warranty and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

69. Defendants Price Law and Financial Warranty sent fourteen (14) phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

70. Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C. § 227(c)(3)(F) by Defendants' calls described above, in the amount of $500 per automated text message.

71. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

72. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F)

## COUNT TWO

### Violations of The Texas Business and Commerce Code 302.101

### (Against All Defendants)

73. Plaintiff incorporates the preceding paragraphs 1-66 as if fully set forth herein

74. The foregoing acts and omissions of Defendants Price Law and Financial Warranty and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

75. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

76. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees and attorney's fees. **Texas**

13

**Business and Commerce Code 302.302(d)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendant as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for fourteen (14) calls.

E. An award of $5,000 in statutory damages arising from fourteen (14) violations of the Texas Business and Commerce code 302.101.

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

G. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity.

H. Such further relief as the Court deems necessary, just, and proper.

April 28, 2023,  
                                        Respectfully submitted,

                                        Brandon Callier
                                        Plaintiff, Pro Se
                                        6336 Franklin Trail
                                        El Paso, TX 79912
                                        915-383-4604
                                        Callier74@gmail.com

14